Anthony RIGGINS, Petitioner–Appellee,
Cross Appellant,

v.

Norris W. McMACKIN,
Respondent–Appellant,
Cross Appellee.

Nos. 90–3375, 90–3407.

United States Court of Appeals,
Sixth Circuit.

Argued March 22, 1991.

Decided June 10, 1991.

Paul Mancino, Jr. (argued), Cleveland, Ohio, for petitioner-appellee, cross-appellant.

Jack W. Decker (argued), Office of Atty. Gen. of Ohio, Columbus, Ohio, for respondent-appellant, cross-appellee.

Before KEITH and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Anthony Riggins filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the guilty plea he entered on April 7, 1983, to the charge of carrying a concealed weapon in the Court of Common Pleas for Cuyahoga County, Ohio. In his petition, Riggins raised three grounds for appeal: (1) he was denied due process when he was sentenced for a felony offense when the indictment charged only a misdemeanor; (2) his guilty plea was not knowingly and voluntarily entered because he was improperly informed of the effect the plea would have

on his parole status; and (3) his guilty plea was not knowingly and voluntarily made because he was never informed of the maximum possible sentence. The district court found that Riggins' first claim had not been fairly presented to the state courts as a federal constitutional claim and was therefore waived. The court found the second claim to be lacking merit because parole implications are indirect consequences of a plea of which a defendant need not be advised. The district court, however, found Riggins' third argument to have merit. It found the record failed to disclose that the trial judge had informed Riggins of the maximum possible sentence and thus the plea was not entered into in a voluntary and intelligent manner.

The superintendent of the Marion Correctional Institution timely appealed and Riggins cross-appealed the adverse portions of the district court's decision rejecting his first two claims. While we affirm the district court's decision rejecting Riggins' first two claims, we remand for a hearing to determine whether Riggins' guilty plea comported with the requirements of due process.

This saga began on July 31, 1980, when Anthony Riggins entered a plea of guilty to one count of aggravated robbery in the Court of Common Pleas for Franklin County, Ohio. He was sentenced to a term of imprisonment of not less than four years nor more than twenty-five years. On January 15, 1982, he was released on parole. Less than eight months later, on August 18, 1982, while still on parole, Riggins was indicted on a charge of knowingly carrying or concealing a deadly weapon under Ohio Rev.Code § 2923.12. On April 7, 1983, Riggins appeared before the Court of Common Pleas for Cuyahoga County, Ohio, at which time he entered the guilty plea at issue in this case. He was immediately sentenced to a term of one to ten years imprisonment. He served fifteen months of his sentence and was paroled on July 10, 1984.

Under Ohio law, a plea of guilty to the concealed weapon charge created a conclusive presumption that Riggins had violated his parole for the earlier aggravated rob-

bery offense. *See* Ohio Adm.Code. § 5120:1–1–19(A)(1). Furthermore, Ohio Rev.Code § 2929.41(B)(3) mandates that a parolee serve any new sentence imposed for a felony consecutively with the prior sentence. Accordingly, Riggins' parole should have been revoked for the aggravated robbery offense and he should have been required to serve consecutive sentences for the earlier aggravated robbery offense and the concealed weapon charge. However, Riggins' parole was not revoked at this time. The record does not indicate whether this was due to inadvertence or a decision on the part of the parole board not to revoke Riggins' parole.

On December 3, 1985, Riggins was found guilty following a jury trial in the Court of Common Pleas for Cuyahoga County, Ohio, for yet another offense—having a concealed weapon while under a disability with firearm and prior aggravated felony specifications in violation of Ohio Rev.Code §§ 2923.12(D) and 2929.71. Riggins was sentenced to a term of three to five years imprisonment to be served consecutive with and following a term of three years actual incarceration for the firearm charge. After his conviction for this offense, Riggins' parole was revoked for his two prior offenses. Consequently, he is now serving an aggregate sentence of eight to forty years which is being served consecutively with and following his current sentence of three years actual incarceration.

When Riggins' parole for his guilty plea of April 7, 1983, for carrying a concealed weapon was revoked, he sought and obtained leave to file a delayed appeal of that conviction in the Ohio Court of Appeals. Riggins raised three issues there:

(1) The trial court committed prejudicial error in sentencing the defendant to a term of imprisonment for a felony offense for the reason that the indictment returned against the defendant only alleged a misdemeanor offense.

(2) The trial court committed prejudicial error in accepting a plea of guilty when the constitutional right of a defendant was violated in that this was not a knowing and voluntary plea because the de-

fendant was not properly advised as to the consequences of his parole status and the effect of a new conviction.

(3) The defendant was denied due process of law when the court accepted a plea of guilty without determining that the defendant understood what the maximum penalty was for the offense to which he was entering a plea of guilty.

The Ohio Court of Appeals affirmed Riggins' conviction on March 19, 1987. In addressing Riggins' third claim, the Ohio Court of Appeals found that "the trial court substantially complied with the procedure set forth in Crim.R. 11 by insuring the defendant was aware of his constitutional rights and the guilty plea is, therefore, valid. *State v. Stewart*, (1977), 51 Ohio St.2d 86 [5 O.O.3d 52, 364 N.E.2d 1163]." The Ohio Court of Appeals noted that "[i]n *Stewart*, the [Ohio Supreme Court] stated 'there must be some showing of prejudicial effect before a guilty plea may be vacated.'" The court found that Riggins had failed to show any prejudicial effect from failing to be informed of the maximum possible sentence by the trial court and that the trial court had adequately informed him of his constitutional rights. The Ohio Supreme Court declined review. Thereafter, Riggins filed this petition for writ of habeas corpus.

█ We have little difficulty in affirming the district court's decision with respect to the first two issues raised by Riggins in his habeas petition. Riggins' first issue, that he was denied due process when he was sentenced on the basis of the felony provisions of Ohio Rev.Code § 2923.12, rather than the misdemeanor provisions of the statute, was not presented as a federal constitutional claim to the Ohio courts. Although Riggins did raise the misdemeanor/felony issue during the course of his state court appeal, he did so purely in the context of state law arguing, in effect, that under Ohio law the terms "loaded gun" and "firearm" are not synonymous. There is simply nothing in the record to indicate that Riggins *ever* apprised the Ohio state courts of his federal constitutional claim.

*See Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir.1987).

■■■ A state prisoner generally must first give the state courts a fair opportunity to remedy any constitutional infirmity in the conviction before seeking relief in a federal court. *See Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989); *see also Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir.1989). Ordinarily, when a state prisoner raises a constitutional claim for the first time in his petition for habeas corpus the petition is dismissed to permit the state court to review the claim. However, Riggins is now precluded from raising his due process claim in Ohio state court because he had the opportunity to raise the issue during the course of his direct appeal and failed to do so. *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Thus, because Ohio law establishes a procedural bar to Riggins' due process claim, this court will not consider that claim unless Riggins establishes adequate cause to excuse his failure to raise the claim during his state court appeal and actual prejudice to him from the fact that the state courts did not address the merits of his due process claim. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

Riggins alleges neither cause nor prejudice in failing to present his due process claim in the Ohio courts. Rather, Riggins argues that he should be excused from demonstrating cause and prejudice because he is "actually innocent." *See Murray,* 477 U.S. at 495–496, 106 S.Ct. at 2649. However, Riggins does not argue that he is innocent of the underlying offense of carrying a concealed weapon but rather that he was sentenced improperly. Accordingly, the district court was correct in not addressing this issue.

■■ With respect to the second issue raised by Riggins, the district court concluded that "[s]ince it is clear from the record that the court apprised the petitioner as to the possibility that his parole status would be adversely affected by a new criminal conviction, this Court finds that petitioner entered his guilty plea fully aware of the parole consequences." The record indicates that the following exchange took place between the court, Riggins and his counsel at the sentencing on April 7, 1983.

THE COURT: Have you discussed the possible consequences of a plea with Mr. Schwartz [Riggins' counsel] as far as your parole status is concerned?

COUNSEL: Your Honor, I have gone over with Mr. Riggins his rights constitutionally in regard to this plea and this plea is voluntarily and intelligently made without any force, coercion or threats. He is well aware of the fact that the decision is up to the Parole Board as to what they will do with him; also advised him of the fact that ... they could very well flop him over and the original sentence could be ordered into execution and it could be made consecutively.

THE COURT: Are you in agreement with your attorney insofar as his reference to your understanding is concerned?

MR. RIGGINS: Yes.

THE COURT: Now, you must further understand this Court can make no promises or representations to you what I will do with your case by way of this plea nor any representation as to how this plea might affect your parole status or whether it would affect it adversely; we can make no promises in that regard, do you understand that?

MR. RIGGINS: Yes.

Riggins argues that his plea was not voluntarily and intelligently entered into because the sentencing court failed to correctly advise him of the relevant Ohio law concerning the effect his guilty plea would have on his parole status. Specifically, Riggins argues that he was not sufficiently apprised of the fact that under Ohio law his guilty plea to the new felony must, as opposed to may, result in revocation of parole in the prior offense, and that the sentences must, as opposed to may, be served consecutively. *See* Ohio Adm.Code § 5120:1–1–19(A)(1); Ohio Rev.Code § 2929.41(B)(3). In support of this argument, Riggins relies upon the unpublished Ohio Court of Appeals case of *State v.*

*Brown,* No. 47578, 1985 WL 7465 (Ohio Ct.App. January 24, 1985), in which the court held that the defendant was never informed of the foreordained consequences of his plea. The court found that the sentencing court not only failed to inform the defendant of the maximum penalty involved, but affirmatively misled him by implying that it had some discretion to impose concurrent sentences. *Id.*

Riggins' argument that his guilty plea was not voluntary and intelligent because the trial court failed to inform him of the automatic effect his guilty plea would have on his parole status belies common sense. Riggins argues, in effect, that he was misled by the trial court because under Ohio law his guilty plea would result in an automatic revocation of his parole and the imposition of mandatory consecutive sentences. However, the record indicates that Riggins' parole was not revoked nor were consecutive sentences imposed as a result of his April 7, 1983 guilty plea. In fact, Riggins' parole was not revoked until he was convicted of a third crime on December 3, 1985. Even if we were to conclude that the trial court erred in failing to inform Riggins of the automatic revocation of his parole and the imposition of consecutive sentences, we would nevertheless deny habeas relief because Riggins is unable to demonstrate any prejudice resulting from the alleged omission. We thus affirm the decision of the district court with respect to this issue although we do so for different reasons. We do not find, as did the district court, that the record establishes that Riggins was adequately informed of all the possible parole consequences surrounding his plea. However, because Riggins' parole was not revoked as a result of his April 7, 1983 guilty plea he cannot demonstrate that he was prejudiced by the trial court's omission and therefore is not entitled to habeas relief.

In addressing Riggins' third issue, the district court found "that the petitioner was not informed of the full measure of the direct consequences he would face before his guilty plea was accepted. Thus, petitioner's plea was not entered in a voluntary and intelligent manner." The district court explained:

> There was no valid reason for the court's failure to inform the petitioner of the direct consequences of his guilty plea. Ohio R.Crim.P. 11 contains a list of the specific constitutional rights which a court must explain to a defendant before accepting a guilty plea. Moreover, Rule 11 prohibits a court from accepting a guilty plea without first addressing the defendant personally and determining that the defendant understands the maximum penalty involved.... It is difficult to have to overturn this conviction on the basis of the omission of one item from this list, but the court's failure to determine whether petitioner understood the consequences of his plea constituted a serious violation of petitioner's rights under the Constitution which cannot be left unremedied.

We note at the outset our concern over the district court's apparent reliance on the trial court's failure to strictly adhere to Ohio R.Crim.P. 11 in concluding that Riggins' guilty plea violated due process. In *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court held that district courts are required to strictly comply with the requirements of Fed.R.Crim.P. 11. *But see United States v. Goldberg,* 862 F.2d 101 (6th Cir.1988) (noting that the *McCarthy* holding was limited by the addition of Federal Rule 11(h)). In *McCarthy,* the Supreme Court rested its decision solely on its construction of Federal Rule 11 and did not reach any constitutional arguments. *Id.* at 464, 89 S.Ct. at 1169. Indeed, the Court noted that the procedures embodied in Rule 11 have not been held to be constitutionally mandated, citing a Sixth Circuit case, *Waddy v. Heer,* 383 F.2d 789 (6th Cir.1967), cert. denied, 392 U.S. 911, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968). *Id.; see also Kelleher v. Henderson,* 531 F.2d 78 (2d Cir.1976) (court rejects defendant's argument that knowledge of the maximum possible sentence to which he is sentenced is constitutionally required).

We have held that Rule 11 of Fed.R. Crim.P. does not apply to state court proceedings. *Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975). Therefore, Ohio state courts are not compelled to comply with its requirements. Ohio does, however, have a similar state court rule, Ohio R.Crim.P. 11, which contains similar language to that of its federal counterpart. The Ohio Supreme Court has interpreted its own Rule 11 as requiring only substantial compliance by its trial courts and additionally, a defendant must demonstrate actual prejudice before a guilty plea will be vacated. *State v. Stewart,* 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

In this case, the Ohio Court of Appeals determined the trial court substantially complied with the requirements of Ohio R.Crim.P. 11. We must respect this determination unless there occurred a violation of due process. The district court's decision granting Riggins' writ of habeas corpus appeared to rely upon the fact that the trial court did not strictly adhere to the requirements of Ohio R.Crim.P. 11. In this respect, the district court was in error. The district court's sole inquiry should have been, as is ours, whether Riggins' guilty plea comported with the protections of due process.

The applicable standard for determining the validity of guilty pleas under due process was set forth in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). There the Supreme Court held that a guilty plea is only valid if it is both "voluntary" and "intelligent." *Id.* at 242, 89 S.Ct. at 1711; *see also North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) ("The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to defendant."). Likewise, in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court held that for a plea to be voluntary and intelligent a defendant must be apprised of the direct consequences of entering the plea. *Id.* at 755, 90 S.Ct. at 1472 (quoting *Shelton v.*

*United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957)). We test the voluntariness of a plea by considering the totality of the circumstances. *Id.* at 749; *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir.), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984).

The record in this case indicates that the trial court failed to inform Riggins about the maximum possible penalty which could result from his guilty plea. This fact alone, however, does not require Riggins' conviction be vacated. *See, e.g., Pitts v. United States,* 763 F.2d 197 (6th Cir.1985) (per curiam); *Fontaine v. United States,* 526 F.2d 514 (6th Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976); *Roddy,* 516 F.2d at 1384. In determining whether a defendant's plea was voluntary and intelligent, our inquiry is not limited solely to the information provided to the defendant by the trial court, but rather we examine the totality of the circumstances surrounding the plea. *Berry,* 726 F.2d at 1146. "A defendant may learn of information not relayed to him by the trial court from other sources, such as his attorney." *Pitts,* 763 F.2d at 200; *see also Alford,* 400 U.S. at 29 n. 3, 91 S.Ct. at 163 n. 3.

In fact, the record in this case indicates that Riggins and his attorney did discuss his possible sentence. At one point during the trial court's questioning of Riggins concerning his guilty plea, some confusion arose as to whether Riggins was entering a plea of "no contest." The trial court suspended the hearing in order for Riggins to confer with counsel. After the recess, Riggins' counsel informed the court:

Your Honor, during the break I did review the matter with my client and we had a misunderstanding.

He thought that if you entered a guilty plea, he would be admitting ownership of that weapon, which would be a longer sentence and in fact all he was admitting was possession.

I have explained to him legally he was merely admitting possession as of the moment.

As this statement indicates, Riggins was, quite understandably, concerned about the sentence he would receive as a result of his guilty plea. As this court commented in *Berry;* "it taxes credibility to suggest that the paramount question of sentence, from the point of view of the accused, would have remained unexplored in the attorney/client conferences." 726 F.2d at 1149.

It is important to stress that this is not a case where the defendant received incorrect information from either the trial court or his attorney concerning the maximum possible sentence he could receive as a result of his guilty plea. *See, e.g., Hart v. Marion Correctional Institution,* 927 F.2d 256 (6th Cir.1991) (both the trial court and counsel incorrectly advised the defendant as to his maximum possible sentence); *Pitts,* 763 F.2d at 201 (noting that affirmative misstatements of the maximum possible sentence are more serious than mere failure to provide defendant with some information he later claims would have affected his plea decision). Rather, Riggins is claiming that because the trial court did not specifically indicate to him the maximum possible sentence at the time he entered his plea, he was prevented from making a voluntary and intelligent waiver of his constitutional rights. We naturally view such claims with some diffidence because the potential for abuse is clear: a defendant may attempt to invalidate an otherwise valid plea by claiming that he was denied some material information solely because he has become unhappy with the results of his plea.

We therefore conclude that an evidentiary hearing is necessary in order for the district court to properly ascertain whether Riggins was aware of the maximum possible sentence facing him when entering his guilty plea. In addition, we note that Riggins not only must demonstrate that he was not informed by counsel as to his maximum possible sentence, but also that he would not have otherwise pleaded guilty except for the omission. *See Pitts,* 763 F.2d at 201.

Accordingly, we reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.