# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL EVAN RICKMAN,

        Defendant-Appellant.

UNPUBLISHED
March 15, 2016

No. 324386
Wayne Circuit Court
LC No. 13-010678-FC

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] his jury trial convictions of five counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1), assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), and unlawful imprisonment, MCL 750.349b. We affirm.

## I. FACTS

This case arises from the violent sexual and physical assault of Daz'Nair Hayden. According to Hayden, defendant, with whom she was acquainted, came to the apartment she shared with her boyfriend at a time her boyfriend was not there. She testified that defendant made a sexual advance toward her, which she rejected, at which point defendant walked into her bedroom, closed the door and said, "you don't have a choice." Although she first believed defendant was joking, he then held a box cutter to her throat, pushed her onto the bed, pulled her pants off, and raped her orally, anally, and vaginally. She testified that defendant ejaculated on the bedding and then forced her to go into the bathroom to wash herself. After she did so, defendant cut her throat with the box cutter and punched her in the back of her head.[2] She fell into the bathtub and a few moments later her boyfriend walked into the apartment. She testified that defendant told her boyfriend that she was trying to kill herself and then left the apartment.

---

[1] *People v Rickman*, unpublished order of the Court of Appeals, entered April 9, 2015 (Docket No. 324386).

[2] During her trial testimony, Hayden showed the jury the scar from the box cutter on her throat, which was approximately 6 to 8 inches long.

-1-

Her boyfriend called 911. At the scene, Hayden identified defendant as her assailant before she was taken to the hospital.

The police collected Hayden's bedding, and it was analyzed for serology and DNA. A forensic scientist testified that defendant's sperm located in multiple areas on the bedding.

Defendant was questioned by the police and voluntarily gave a statement. He stated that he had gone to Hayden's apartment and observed her in a violent, physical dispute with her boyfriend. He stated that he saw Hayden come out of a room with her neck bleeding, so he called 911 from his cellphone. He denied having physical or sexual contact with Hayden.

At trial, however, defendant testified that he had consensual intercourse with Hayden.[3] He further testified that after they were finished, Hayden went into the bathroom and then her boyfriend arrived at the apartment and went into the bathroom to speak with her. According to defendant he heard the two of them fighting and Hayden's boyfriend emerged from the bathroom holding a box cutter and Hayden emerged with her neck bleeding. Defendant testified that he left the apartment and called 911 to report that Hayden had been attacked by her boyfriend.

## II. MOTION FOR ADJOURNMENT

Defendant first argues that the trial court abused its discretion and deprived him of his state and federal constitutional right to present a defense and to effective assistance of counsel when it twice denied his request for an adjournment because he had not received DNA results or medical records.[4] We agree that the trial court's refusal to grant the adjournment constituted an abuse of discretion. However, we conclude that the error ultimately proved to be non-prejudicial and so do not reverse defendant's convictions.

In *People v Williams*, 386 Mich 565; 194 NW2d 337 (1972), our Supreme Court articulated four factors it considered important in determining whether the trial court's denial of an adjournment constitutes an abuse of discretion. The Court examined whether the defendant: (1) was asserting a constitutional right; (2) had a legitimate reason for asserting the right; (3) was not guilty of negligence; and, (4) had not requested prior adjournments. *Id.* at 578; see also *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003) (accord). In *People v Wilson*, 397 Mich 76; 243 NW2d 257 (1976), our Supreme Court held that to justify reversal, a defendant must also "demonstrate prejudice resulting from the trial court's abuse of discretion." *Id.* at 81; see also *Coy*, 258 Mich App at 18-19.

---

[3] Defendant testified that he did not initially tell the police about his sexual contact with Hayden because he was afraid of what his wife would think.

[4] This Court reviews a denial of a request for adjournment for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). A court abuses its discretion when it chooses a result that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

The record reflects that defendant first requested an adjournment at the pretrial held two days before trial. At that time, defense counsel stated that he still had not received a copy of the DNA laboratory report and had still not received the records of Hayden's treatment at the emergency room. He expressed his concern that upon receipt he would not have adequate time to review the DNA results and medical reports so as to consider them in his trial preparation. The prosecution responded that it also had not yet received the DNA report or emergency room records and promised to provide both to defendant immediately upon receipt.

When, on the first day of trial, the materials had not yet been provided to defense counsel, he reiterated his concern and his request for an adjournment. The prosecutor, again, stated that he also had not yet received the results and added:

> I expect to have the lab report today. Either the defendant's DNA is on the sheets or it is not. I expect to have the medicals today. . . . The only thing that could be pertinent in the medical records, and I've talked to defense about this, is whether the victim accused someone else at the hospital.

We can find no basis for the trial court to have denied the motion to adjourn. Defendant unequivocally met the four *Wilson* factors: The record shows that (1) he was asserting his due process right to present a defense; (2) had a legitimate reason for asserting the right (he had not received DNA results or medical records prior to trial); (3) was not guilty of negligence; and (4) had not requested any prior adjournments. See *Williams*, 386 Mich at 578; *Coy*, 258 Mich App at 18. The trial court's denial of the motion was an abuse of discretion. Indeed, the trial court did not even indicate why it was denying the motion.

Despite this conclusion, we do not reverse on this basis as a likelihood of prejudice has not been shown. When the materials were provided to defense counsel after jury selection, it became clear that their earlier arrival would not have provided any assistance to the defense. The DNA analysis confirmed that defendant's DNA was on the bedding. More to the point, given defendant's testimony at trial that he and Hayden had consensual sex on the bed, there was no reason to contest the DNA finding. The attorneys and the court had a colloquy regarding the hospital records on the morning of the second day of trial. The prosecution stated that the medical records did not reveal that Hayden made any inconsistent statements. Defense counsel stated that the emergency room record included a report of a statement by Hayden to some caregiver, possibly an EMT, that she had been forced into a car. The prosecution agreed to try to make the EMT available to defense counsel that day. Defense counsel did not renew his motion to adjourn and the issue was not mentioned again during the trial. Defendant has not provided any evidence that Hayden made such a statement or that the medical record implied that it was made. And despite having the medical record, when cross-examining Hayden, defense counsel did not attempt to question her regarding a statement about being forced into a car. We can only conclude that the concern about such a statement proved to be unfounded.

Therefore, despite the fact that the trial court abused its discretion by denying the motion for adjournment, it did not result in prejudice and so does not require a reversal.

## III. SUBSTITUTION OF COUNSEL

Defendant next argues that the trial court abused its discretion in declining to appoint substitute counsel.[5] We disagree.

"Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). Good cause may be found where defendant and his appointed counsel develop a disagreement over fundamental trial tactics. This can include an assertion by the defendant that the attorney is "inadequate, lacking in diligence, or disinterested in the case." *People v Buie (On Remand)*, 298 Mich App 50, 68; 825 NW2d 361 (2012), quoting *People v Meyers*, 124 Mich App 148, 166; 335 NW2d 189 (1983). However, "[a] mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). A disagreement between a defendant and his trial counsel with regard to what evidence to present is not good cause for substitution of counsel. *Id*. The *Strickland* Court also observed that a substitution of counsel is not appropriate where the judicial process will be unreasonably delayed. *Id*. at 399.

Defendant requested new counsel at the pretrial on February 4, 2014, two days before trial was scheduled to begin. At that time, the following exchange took place on the record:

> *Defendant*. Your Honor, I feel that I'm having ineffective assistance of counsel and I would request to have a new attorney.
>
> *The Court*. Are you going to hire one?
>
> *Defendant*. I don't have the funds to hire another attorney.
>
> *The Court*. Denied. There's a trial set for Thursday.
>
> *Defendant*. I understand but none of my motions have been filed and I really don't think feel that he's fighting for my best interest.
>
> *The Court*. Too bad. He's your lawyer.

The court then inquired about defendant's specific complaints. In response, defendant complained that defense counsel had failed to file motions to: (1) exclude DNA evidence; (2) preclude admission of a bloody knife found by defendant's car; (3) exclude the tape or transcript

---

[5] We review for an abuse of discretion a trial court's decision on a motion regarding substitution of counsel for an abuse of discretion. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). While defendant has the right to effective assistance of counsel, he does not have the right to appointed counsel of his choice. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012).

of the 911 call; (4) obtain discovery of Hayden's boyfriend's criminal record; and (5) quash the information. A review of the record reveals that, at the time of the pretrial: (1) DNA results were not yet available; (2) the admissibility of the bloody knife would be determined at trial;[6] (3) the admissibility of the 911 call would be determined at trial;[7] (4) the prosecutor provided defense counsel with the opportunity to view Hayden's boyfriend's criminal record[8] (although defense counsel appeared to already be aware that it did not contain any impeachable offenses); and (5) the trial judge read the preliminary examination transcript and found that the magistrate did not abuse his discretion in binding defendant over for trial. Thus, there was no reasonable basis for concluding that trial counsel was ineffective for not having filed the motions, which were either premature or had no basis. Moreover, contrary to defendant's assertion on appeal, the record simply does not support a conclusion that a complete breakdown in the attorney-client relationship had occurred to the extent that substitute counsel was warranted. *Buie (On Remand)*, 298 Mich App at 67. Accordingly, the trial court did not err in denying defendant's motion for substitution of counsel.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence presented at trial to support his conviction of assault with intent to commit murder.[9] We disagree.

The elements of assault with intent to murder are: "(1) an assault; (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Warren (After Remand)*, 200 Mich App 586, 588; 504 NW 2d 907 (1993). Because the offense of assault with the intent to kill is a specific intent crime, "[i]t must be shown that the defendant intended to kill the victim under circumstances that did not justify, excuse, or mitigate the crime." *People v Lipps*, 167 Mich App 99, 105; 421 NW2d 586 (1988). "[R]easonable inferences arising from the

---

[6] The trial judge stated, "Oh, if it's not relevant, it won't come in. I do those at trial, I don't need a motion."

[7] The trial judge stated, "Well, those are subject to timely objection. We go to trial and then I rule as there's an objection to hearsay. I don't do those pretrial for anyone."

[8] The boyfriend was not called as a witness in the case because the prosecutor was unable to serve him with a subpoena.

[9] This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; ___ NW2d ___ (2015). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, [this Court] review[s] the evidence in the light most favorable to the prosecutor and determine[s] whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation omitted). In reviewing the sufficiency of the evidence challenge, this Court will not interfere with the trier of fact's determinations regarding the weight of evidence or the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

evidence may constitute satisfactory proof of the elements of the offense." *Warren (After Remand)*, 200 Mich App at 588.

Here, the evidence established that defendant held a box cutter to Hayden's throat and raped her orally, vaginally, and anally. Defendant then forced Hayden into the bathroom, where he made her get into the bathtub, and wash herself. After she had finished washing, defendant called her a stupid bitch, slit her throat with the box cutter, and punched her in the head. Hayden fell into the bathtub. Her boyfriend then entered the apartment and before Hayden could say anything, defendant told her boyfriend that she was trying to kill herself before leaving the apartment. Hayden was taken by ambulance to the hospital where she underwent surgery immediately. Viewed in the light most favorable to the prosecution, the jury could reasonably infer that defendant intended to kill Hayden when he slit her throat.[10]

## V. COSTS

Finally, defendant contends that the trial court erred in imposing $600 in court costs at sentencing. We disagree.

In *People v Cunningham*, 496 Mich 145, 147; 852 NW2d 118 (2014), the Michigan Supreme Court held that MCL 769.1k(1)(b)(*ii*) did not provide trial courts with independent authority to impose court costs and instead only authorized trial courts to impose court costs specifically authorized by statute. However, in *People v Konopka (On Remand)*, 309 Mich App 345, 354; 869 NW2d 651 (2015), this Court recognized that after *Cunningham* was issued, the Legislature amended MCL 769.1k. The amended statute became immediately effective October 17, 2014, and the *Konopka* Court held that the imposition of court costs against the defendant was authorized by the amended version of the statute. *Konopka (On Remand)*, 309 Mich App at 354, 357. In the instant case, defendant was sentenced on February 12, 2014, and the trial court imposed court costs in the amount of $600. The amended version of MCL 761.1k(1)(b)(*iii*) is applicable to this case, because the amended statute governs the imposition of all "fines, costs

---

[10] We note that defendant was convicted of assault with intent to commit murder and assault with intent to do great bodily harm. Although assault with intent to do great bodily harm is a necessarily included lesser offense of assault with intent to commit murder, *People v Brown*, 267 Mich App 141, 150-151; 703 NW2d 230 (2005), this Court has held that a defendant may be convicted of both offenses so long as the incidents giving rise to the convictions are "distinct and separate," *People v Colon*, 250 Mich App 59, 63-64; 644 NW2d 790 (2002). Here, defendant has not argued that the incidents giving rise to his convictions were not "separate and distinct." Accordingly, we do not address whether defendant's convictions violated double jeopardy protections.

and assessments ordered under MCL 769.1k before June 18, 2014, the date *Cunningham* was decided, and after October 17, 2014, the effective date of the amendatory act." See *Konopka (On Remand)*, 309 Mich App at 357.

Affirmed.


/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro